■Statement of the Case.
MONROE, J.
Plaintiff's, seven in number, appearing as residents, taxpayers, and voters of the parish of Allen, allege that by an ordinance of date August 24, 1912, the police jury of said parish ordered an election to be held on September 24th following, to take the sense of the qualified electors of the parish upon the question of the selection of a permanent parish seat, “as provided in Act 27 of the acts of the General Assembly of the’ year 1910” ; that the election was held as ordered, and, the town of Kinder and the village of Oberlin being the opposing candidates, the village of Oberlin was declared to have been selected; that the election was fraudulent and void for the reasons that all those who voted thereat were illegally registered, or not registered at all, and many had not paid their poll taxes; and that said election was not held at the time provided by law, which general *56 allegations are followed by certain specifications. There is a prayer for citation and for judgment setting aside the election. The defendant (police jury) excepted to the jurisdiction of the court, ratione materise, the exception was maintained, and the suit dismissed, and plaintiffs prosecute the appeal.
The parish of Allen was created by Act No. 6 of 1912, section 4 of which provides:
“That the said parish of Allen shall be organized in accordance with the provisions of Act 27, * * * approved June 24, 1910, in all respects in which the provisions of said act do not conflict with the provisions of this act: Provided, that the parish ofiicers to be elected for the parish of Allen in accordance with the provisions of Act No. 27 of * * * 1910, shall be elected at an election to be held on the third Tuesday in December, 1912, and shall qualify and assume the duties and functions of their respective offices on January 1, 1913, or immediately thereafter. * * * ”
There is no provision in the act, thus quoted, for an election to determine the location of a permanent parish seat, hence we turn to Act 27 of 1910 and find the following:
“Sec. 2. * * * That the police jurors, so appointed by the Governor, shall, within ten days after the receipt of their commissions, meet in said parish at the town at which the affairs shall be temporarily administered, in accordance with the act creating the same, or, if no town be so named, then at such town as they may agree on, at which meeting they shall proceed to organize themselves into a police jury for the said parish and shall prescribe the conditions under which any place or town within said parish may compete at the election here■'nafter authorized for the location of the permanent parish seat of said parish. * * * They shall, also, at the same meeting, fix a date for the holding of a special election, at which shall be elected * * * a representative, a clerk of court, a sheriff and assessor, a coroner, and, for each ward in said parish, one police juror, one member of the school board, one justice of the peace and one constable, and all other parish ofiicers, who, under existing laws, are required to be elected by the people. This election shall be fixed for a date not less than sixty nor more than ninety days after the said meeting shall be held, and the returns thereof made under the general election laws of the state. * * * See. 4. * * * That, at the election provided for in section 2 of this act, there shall also be determined, by ballot of the qualified electors of such parish, the location of the permanent parish seat.”
Opinion.
[1] Reversing the order in which their grounds of attack are stated in the petition, plaintiffs allege: (1) That “the election was held prematurely, and was not called and held at the time and in the manner prescribed by Act 27 of the Acts of 1910 and Acts of 1912, creating the parish of Allen”; and (2) that said election was void, because, for certain reasons which are set forth, the persons who participated in it were either- illegally registered or not registered at all, and many had not paid their poll taxes.
The exception to the jurisdiction of the court was addressed and maintained as to both issues thus tendered.
The allegation that the election was held prematurely, and not at the time prescribed by law, is, however, equivalent to an allegation that, within the contemplation of the law, there has been no election, since the police jury was unauthorized to order an election, save at the time fixed by the law, and there can be no election, save under legal authority. As to the question thus presented, we are therefore of opinion that the court a qua had jurisdiction, and that the exception should have been overruled. Police Jury v. Town of Ponchatoula, 118 La. 138, 42 South. 725; Hagens et al. v. Police Jury, 121 La. 634, 46 South. 676.
[2] The other ground of attack is in effect, that the election was not carried by persons having the requisite qualifications to entitle them to vote, a complaint which lies at the root of all election contests. There is, however, no law authorizing contests in cases of this kind, and it is well settled that, in the absence of a specific grant, the courts are without jurisdiction to entertain them. Darbonne et al. v. Village of Oberlin, 121 La. 641, 46 South. 679, and cases there cited.
Article 277 of the Constitution provides that:
“The General Assembly may establish and organize new parishes, which shall be bodies cor *58 porate, with such powers as may be prescribed by law. * * * ”
And the only limitation upon the power thus granted to the General Assembly is the proviso (or “but”) in the article quoted with regard to the area and population of any new parish that may be created. The General Assembly might, therefore, itself have selected the permanent parish seat of Allen parish; . or it might have appointed commissioners to make the selection, and have declared- that their decision should be final; or it might, as it has done, have declared that the matter should be determined by an election, and have made no provision for a contest of such election in the courts. The learned counsel for plaintiffs argues that the right to resort to the courts is secured by the grant of jurisdiction contained in article 109 of the Constitution, which reads:
“The district courts, except in the parish of Orleans, shall have original jurisdiction in all civil matters where the amount in dispute shall exceed fifty dollars, exclusive of interest, and in all cases where title to real estate is involved, or to office, or other public position, or civil or political rights, and in all other cases where no specific amount is in contest, except as otherwise provided in this Constitution. * * * They shall have unlimited and exclusive original jurisdiction * * * in all cases where the state, parish, any municipality or other political corporation is party defendant, regardless of the amount in dispute. * * * ”
The article thus quoted must, however, be read in connection with other articles of the same instrument, and with the settled jurisprudence of this court; and, so read, it cannot be assumed that its purpose was to confer upon the judiciary jurisdiction with respect to matters which have long been held to fall within the jurisdiction of another department of the government. It would hardly be contended, for instance, that, under the grant contained in article 109, a citizen can sue the state, without special legislative authorization, or that the courts could exercise jurisdiction in a suit to enjoin the General Assembly from enacting, or to command it to enact, a particular statute; and the same thing may be said of any other matter which, in the distribution of governmental powers, belongs either to the legislative or the executive department, and, within the contemplation of the Constitution, is not a matter of judicial cognizance. More than 50 years ago, it was said by this court:
“The contesting of votes is not a judicial function, only so far as made such by special statute. Indeed, some may have gone so far as to question whether this is not wholly a matter of administration which cannot, with propriety, be referred to the judicial tribunals at all. At any rate, it is clear that •'such tribunals cannot usurp any greater control over this business than is specially imposed upon them by law. In the absence of statutory authorization, they are without jurisdiction of the matter, ratione materise.” State v. Judge, etc., 13 La. Ann. 90.
In State ex rel. Woodruff et al. v. Police Jury, 41 La. Ann. 846, 6 South. 777, Mr. Justice Fenner, as the organ of the court, after quoting as above from the opinion in State v. Judge, proceeds as follows:
“During the lapse of more than 30 years since that decision was rendered, there has never been a judicial utterance from this court controverting its correctness. * *- * It is vain tc\ quote article 11 of the Constitution of 1879, which guarantees ‘adequate remedy by due process of law’ for all legal rights. A like article existed in the Constitution prevailing when this jurisprudence was established. Equally vain is the reliance placed on the language of article 250, requiring that changes of parish seats shall be ‘adopted by a majority of votes cast at said election.’ A like requirement is clearly implied in every election ordained by the Constitution, viz., that the officer shall be chosen by a majority of votes over any other candidate; and if this does not authorize judicial inquiry into the question of the majority vel non, without statutory authority, in the case of an officer, why should it in the case of the parish seat?”
In State v. Foster, 111 La. 1087, 36 South. 200, it was held (quoting syllabus):
“The courts of this state are without jurisdiction to entertain an action contesting the *60 validity or result of a primary election, in the absence of express statutory authorization. The question belongs to the political department of the government.”
In Hagens v. Police Jury, 121 La. 634, 46 South. 676, it was held that the right of au individual to contest an election is not a civil or political right, within the meaning of article 109 of the Constitution, and that the courts are without jurisdiction quoad such contest, save as specially authorized by statute; but that the question, whether an election has or has not been legally ordered, is one that may be inquired into.
We feel constrained to reverse the judgment appealed from, in so far as it declines jurisdiction of the question of the prematurity, vel non, of the holding of the election; and, as that question has not been decided by the judge a quo, we shall leave it for his consideration, should the plaintiffs conclude to press it. In view, however, of the character of the case and of the fact that an entire parish is being held in suspense, we will say that the impression that we have derived from our examination of the law applicable thereto is that the ground of exception presenting that question is not well taken.
For the reasons thus assigned, it is ordered, adjudged, and decreed that, in so far as the judgment appealed from sustains the plea to the jurisdiction of the court, quoad the question of the legality of the election here attacked, as affected by the qualifications of those who participated in it, said judgment be affirmed; and, in so far as it sustains said plea, quoad the question whether said election was ordered and held at the time prescribed by law, said judgment be set aside, and the case remanded, in order that said question may be considered on its merits. It is further decreed that the costs of the appeal be paid by defendants, and that those of the district court await the final judgment